IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>vs.<br><br>JASON MICHAEL MILES<br><br>    *Defendant.* | DOCKET NO. 1:20-CR-85<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE** |

Defendant, Jason Michael Miles, by and through his counsel of record, Assistant Federal Public Defender Mary Ellen Coleman, hereby submits his position regarding sentencing the factors under 18.U.S.C. § 3553(a). Mr. Miles sentencing position is based on the attached sentencing memorandum, exhibits, and any further evidence and argument that may be presented at sentencing.

                                            Respectfully submitted:

                                            <u>s/ Mary Ellen Coleman</u>
                                            Mary Ellen Coleman
                                            NC Bar 45313
                                            Assistant Federal Public Defender
                                            Office of the Federal Public Defender for the
                                            Western District of North Carolina
                                            1 Page Avenue, Suite 210
                                            Asheville, NC 28801
                                            (828) 232-9992 Phone
                                            (828) 232-5575 Fax
                                            Mary_Ellen_Coleman@fd.org

Date: August 2, 2021

1

**MEMORANDUM**

Defendant, Jason Michael Miles, through undersigned counsel, hereby submits the following information for this Honorable Court to consider in fashioning a sentence which is sufficient but not greater than necessary under 18.U.S.C. § 3553(a). Mr. Miles is before this Court having pled guilty to one count of Receiving Child Pornography in violation of 18 U.S.C. §§2252A(a)(2)(A) and (b)(1). A Final Presentence Investigation Report ("PSR") was prepared on April 14, 2021. The PSR calculates an advisory guideline range of 188-235 months based on a total offense level of 34 and a criminal history category of III. PSR ¶ 90.

Mr. Miles has one pending objection affecting his advisory guideline range. He is requesting this Honorable Court grant his objection, as well as an additional downward variance to a sentence of 97 months. Mr. Miles requests a variance due to the specific mitigating factors in this case, the obsolescence of certain U.S.S.G. § 2G2.2 enhancements as applied in this case, Mr. Miles pre-indictment steps toward rehabilitation including a strong support network, and Mr. Mile's proven ability comply with supervision in a community setting.

I. **ARREST, PERSONAL CHARACTERISTICS, AND POST OFFENSE REHABILITATION**

**Arrest on State Charges**

On May 31, 2018, Jason Michael Miles home was searched pursuant to the federal search warrant issued in this case. He was not home at the time and in addition to the electronic items of evidence seized in the case, a firearm was found in his now wife's nightstand drawer.[1] Mr. Miles was arrested on state charges (PSR ¶54) related to possessing the firearm and failing to register an online identifier with the state, but no federal charges related to the search of his home

were filed at that time. Jason could not make a bond, and after nine months in custody pled guilty to the state charges. He spent thirteen months in custody contemplating how he had arrived at where he was. Jason had not been in any trouble for anything but traffic tickets for twelve years. He knew that when he was released that he had to make changes in his life. Fortunately, he recognized that he had people in his life that would help him do that.

Jason knows that his arrest is a result of his own actions. While in custody, he began looking at his lifestyle, his routine, his habits, and his associates to try to determine what enabled him to offend and what he needed to do to address the underlying issues fueling his behavior. At the time of the offense conduct in this case, Jason and his girlfriend Penny Allen were not yet married. He was working as a construction contractor in the daytime for Mike Packett and taking classes online through Southern New Hampshire University ("SNHU") at night. PSR ¶¶ 73 & 79. He was spending hours alone in his downstairs office working online on his schoolwork. Once his schoolwork was completed, this left him time alone online, and his problematic internet behavior developed

### Attention Deficit Hyperactivity Disorder (ADHD) Diagnosis

Jason was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) as a child and as an adult. Attention deficit and hyperactivity disorder (ADHD) is a neurodevelopmental disorder, characterized by a persistent pattern of inattentive, hyperactive and impulsive behavior, interfering with educational, social and occupational functioning[2]. Some individuals diagnosed with ADHD tend to engage deliberately in behaviors that place them at risk for negative

---

[1] According to the government's discovery, Penny Miles voluntarily disclosed to Special Agent Zaffark that she had a concealed weapons permit and that she had a firearm in her vehicle and inside a nightstand in the master bedroom.
[2] American Psychiatric Association. Diagnostic and Statistical Manual of Mental Disorders, 5th edition, American Psychiatric Press, Washington D.C. (2013). Faraone, S. V. et al. Attention-deficit/hyperactivity disorder. Nature

outcomes including smoking, substance abuse, dangerous driving, gambling and unprotected sex. Although often thought of as only a children's condition, ADHD is a neurobiological disorder that affects individuals across the lifespan.

Catawba Pediatrics Associates records show that Jason began receiving a prescription for Ritalin around 1990, when he was around six years old, for his ADHD. He stopped taking his medication while in the military and later resumed with prescribed Dextroamphetamine (also known as Dexedrine). When someone has ADHD and they're prescribed a therapeutic dose of Dexedrine, it tends to have a calming effect on them so that they can concentrate and focus without symptoms, such as hyperactivity or impulsivity. Some Dexedrine tablets are short acting and are taken two to three times a day. At the time of the offense, Jason was on a schedule with his ADHD medication that had him taking the short acting medication three times a day. The short acting medication would wear off in several hours. In the evenings, he would take the medication in order to complete his online course work. However, the medicine would eventually wear off and once the schoolwork was done he would find himself looking for something to do. Bored and restless, the impulsive, sensation seeking, and problematic online behavior would begin. Jason's ADHD is clearly not an excuse for his offense behavior. However, it is a factor of consideration in what contributed to Jason's underlying offense conduct and what treatment steps can be taken to mitigate that conduct from reoccurring in the future.

**Release from State Prison and Rehabilitation**

While in custody for thirteen months, Jason came to realize that there were real concrete changes he could make in his life to prevent himself from reoffending and to rehabilitate. While

---

Reviews: Disease Primers 1, 1–23, doi:10.1038/nrdp.2015.20 (2015).

still in custody, on May 31, 2019, he married Penny. There was now an accountability to their relationship that was not present before his arrest. He was released from his state sentence on July 19, 2019 and moved back into his home with Penny. The two of them eliminated the "basement office" and computer altogether. They took the steps necessary to ensure there was no longer the ability to use a computer in seclusion in the household. Jason had no medication for his ADHD while in state custody. After his release, he restarted his medication with his doctor at Spindale Family Practice[3], but worked to adjust the timing and dosage of his medication to try to avoid experiencing the restlessness in the late evening.

Upon his release from state custody, Jason was rehired by Mike Packett and remained employed with him until he came into custody upon his federal plea. PSR ¶ 76-77. Mr. Packett remains supportive of Mr. Miles and has written a letter on his behalf. Exhibit 1, Letter from Mike Packett. Perhaps most importantly, Jason found a community of individuals that were fully aware of his conduct, and were nonetheless willing to support him, give him accountability, and help him stay on the right track. He joined Penny's church, First Baptist in Rutherfordton, right after his release on his state charges in 2019. He was actually on their prayer list prior to his release from state custody. Jason was open with the church members about his past conduct and about his current offense behavior. The members already knew from Penny about his sex offense conduct prior to his release from the state charges. The church assembled a committee of members to meet with Jason before they allowed him to join in order to determine his intentions and any safety precautions that would need to be enacted to ensure the safety of other church members. Jason has been very candid and honest with the church about what he has done. He

---

[3] Mr. Miles is treated by his primary care physician, which is why there were no mental health records to release. PSR ¶ 71.

5

Case 1:20-cr-00085-MR-WCM   Document 33   Filed 08/02/21   Page 5 of 12

made an agreement with the church setting terms regarding his behavior both in and outside of the church.  He has specifically agreed to no participation in any youth ministry.  He has stuck to his agreement.

The church has become a source of support that Jason could not have predicted.  Jason has engaged in individual pastoral counseling with his Pastor Tim Marsh.  Pastor Marsh has served a role for Jason much like that of an AA/NA sponsor.  If Penny is going to be out of the home for an extended period of time and Jason has concerns, Jason will text Pastor Marsh, who has made himself available day or night to speak with Jason if he needs accountability and encouragement.  Several of the church members have written letters on Jason's behalf, intend to attend his sentencing hearing, and remain willing to support him and Penny both.  Exhibit 2, Letters from church members.

Jason did not communicate with his mother and father much while he was in state prison.  They were disappointed in his behavior and his selfishness.  They refused to help bond him out on his state charges.  However, they continued to communicate with Penny.  Shortly before Thanksgiving of 2019, Jason's grandfather, Vernon, passed away.  Jason put forth an enormous effort to have his grandfather buried in a Veteran's cemetery.  It was then that his parents first really saw a change in Jason and his behavior.  The selfishness was fading.  He was invited home to Hickory for Christmas.  Jason is still rebuilding his relationship with his parents but they are communicating, supportive, and putting in the effort to work through their issues.  Jason has other extended family members who remain supportive, as well as his wife, Penny.  They have also provided letters for the court's consideration.  Exhibit 3, Letters from family.

6

After his release in July of 2019, Jason set parameters in his life with the idea of structure in mind. He did not have enough structure in his life before his arrest and this too contributed to his offense conduct. He created structure in every aspect of his life from literally changing his physical ability to access the internet in his home to forming an agreement through his church not to reoffend. He completed his state post release successfully on April 14, 2020. In August of 2020, a little over a year after his release from state custody, an indictment was filed in the Federal District Court based on the search results from the May 31, 2018 federal search warrant. Doc 1. Over two years had elapsed since his offense conduct.

Jason was released on federal terms and conditions of supervision on August 17, 2021. Mike Packett allowed him to return to work and Jason's supervising probation officers observed him on the job, as well as, his paychecks. PSR ¶ 76. Jason complied with all of the terms and conditions of his federal pretrial supervision just as he had his post release conditions. When a plea agreement was reached, he appeared in court as directed on February 24, 2021, entered into his plea, and came into custody. Post the execution of the search warrant in this case, Jason was lived peacefully in the community without reoffending for over nineteen months[4]. Jason committed no new crimes and presented no danger to others.

Jason Miles has proven in the last few years that he is amenable to supervision. He is committed to never returning to jail and has insight into the wrongfulness of his actions. Jason is interested in further treatment, to address his mental health, impulsivity, problematic sexual behavior, and underlying compulsive actions. Fortunately, he has a stable support network in the community to assist him upon his return.

---

[4] From the period of his state release on July 19, 2019 to his federal plea on February 24, 2021 (19 months and 5 days).

## II. THE CURRENT SENTENCING GUIDELINES HAVE LITTLE APPLICABILITY IN CHILD PORNOGRAPHY CASES

Although it has been argued many times in this Court, it is no less relevant in Mr. Miles' case that the sentencing guidelines for child pornography have reached the point where they are followed far more in the breach than in the honoring. The United States Sentencing Commission continues to produce updated reports detailing the use of guidelines and specific offense characteristics.[5] According to the most recent data available from the United States Sentencing Commission, in fiscal year 2019, less than one-third (30.0%) of non-production child pornography offenders received a sentence within the guideline range. The majority (59.0%) of non-production child pornography offenders received a variance below the guideline range. Non-government sponsored below range variances accounted for 42.2 percent of the sentences imposed.

In fiscal year 2019, the specific offense characteristics of § 2G2.2 continued to routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate. Over 95% of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12). The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied to most cases. Thus, across all non-production child pornography offense types, § 2G2.2 continues to fail to distinguish adequately between more and less severe offenders. The enormous frequency with which these enhancements are applied necessarily describes conduct that is essentially inherent to the crime itself, not aggravating conduct

8

warranting a more serious sentence due to any elevated risk of harm.  Unsurprisingly, each of these specific offense characteristics is present in the calculation of Mr. Miles advisory guideline range.

## Factors Relevant to Mr. Miles Sentencing Calculation

In light of the obsolescence of the current sentencing guidelines for child pornography offenses, the question before the Court is what factors ARE relevant to fashioning the appropriate length of sentence for Mr. Miles.  Mr. Miles has pled guilty to Receipt of Child Pornography and this is a nonproduction, non-contact offense case.  However, Mr. Miles recognizes that there are factors present in the conduct of his case that call for a sentence above the statutory mandatory minimum of 60 months.  Therefore, Mr. Miles submits that a sentence of 97 months is sufficient but no greater than necessary to satisfy the 18 U.S.C. §3553(a) factors in his case.  The presence of the prior conviction in paragraph 50 and the number of images in this case will likely be a consideration in fashioning the appropriate sentence.  Technological changes have increase the volume and accessibility of child pornography and Mr. Miles acknowledges that the number of images in this case demonstrates a significant collection of images.  However, the number of images is not the highest of defendants seen before this court and is approximate to defendants who have received sentences well below their advisory guideline range. Recognizing these issues present in his case, Mr. Miles is not requesting a sentence at the bottom of his guideline range.

There are also mitigating factors present in Mr. Miles case that should be taken into consideration in fashioning the appropriate sentence for Mr. Miles.  Mr. Miles has objected to the application of a two level increase for distribution under § 2G2.2(b)(3)(F) for sending one

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

9

Case 1:20-cr-00085-MR-WCM   Document 33   Filed 08/02/21   Page 9 of 12

"Mega" link to an undercover officer upon his request. Should the court overrule his objection, then Mr. Miles will receive the same increase in his guideline range for one instance of distribution (which amounts to four total levels because he would not receive the reduction pursuant to § 2G2.2(b)(1)) as someone who had distributed multiple times or through peer to peer file sharing.

Also of consideration is Mr. Miles state arrest and convictions emanating from the execution of the federal search warrant on May 31, 2019. PSR ¶ 54. He spent thirteen months in custody and received three criminal history points for these charges that are from the same date as the execution of the federal search warrant. Should Mr. Miles been charged with his federal case for the child pornography offenses occurring during the same search at the same time as the firearm, his multiple counts of conviction would likely have grouped under the federal sentencing guidelines § 3D1.2 as a single criminal episode. He likely would have received no additional base offense levels or criminal history points and the sentences would likely have run concurrently. The failure to register an online identifier state charge should be considered relevant conduct to this offense because it is an act committed during the commission of the federal offense of conviction for Receipt of Child Pornography. U.S.S.G. § 1B1.3.

Instead of being charged with all offenses at the same time, Mr. Miles spent thirteen months in local custody that will not be credited toward his federal sentence, and received three criminal history points sending his criminal history category from a II to a III. The court is free to consider whether Mr. Miles criminal history category over represents the seriousness of his criminal history and whether his thirteen months spent in state custody for offenses that are at

least in part relevant conduct, that will not be credited to him in the Bureau of Prisons, should somehow be reflected in the total length of his federal sentence of incarceration.

Finally, the court should consider Mr. Miles post offense rehabilitation in fashioning a sentence that is sufficient but no greater than necessary. Mr. Miles remained in the community without incident from July of 2019 until his plea on February 24, 2021. He complied with both state post release conditions and federal pretrial supervision. He clearly can comply with terms of community supervision and thrives with structure. He also had no violations of the law in the months between the completion of his state post release and federal case arrest when he was not supervised.

Mr. Miles is now married and has made concrete adjustments to his lifestyle to change his habits. In this case, the Court should give considerable weight to the social support system in Mr. Mile's life especially through his church. A close and supportive support system acts as a reinforcement to assist Mr. Mile's in combatting any desire to access child pornography. It provides an outlet for social needs and acts as a buffer should Mr. Miles encounter stressors that might propel a defendant back to child pornography. Mr. Miles does not use drugs, has a record of consistent gainful employment and has a supportive family and strong social support system. These are all significant protective factors that mitigate Mr. Miles risk of reoffending in the future.

### III. CONCLUSION

This Court is instructed to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). In determining the appropriate sentence, the Court must consider all the characteristics

of the defendant, as well as the circumstances of the offense and must structure a sentence that furthers the purposes of sentencing. Based on the information provided above, Mr. Miles submits that a sentence of 97 months is sufficient but no greater than necessary to satisfy the 18 U.S.C. § 3553(a) factors.

Dated: August 2, 2021                     Respectfully Submitted,


s/ Mary Ellen Coleman
Mary Ellen Coleman
NC Bar 45313
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender for the
Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
Phone (828) 232-9992
Fax (828) 232-5575
E-Mail: Mary_Ellen_Coleman@fd.org
